TROY LAW, PLLC
*Attorneys for the Plaintiff, proposed FLSA*
*Collective Class, and potential Rule 23 Class*
John Troy (JT 0481)
41-25 Kissena Blvd., Suite 119
Flushing, NY 11355
Tel:    (718) 762-1324

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------x
GUANGQING LIN, and
YUN QIANG WU,
*on behalf of themselves and others similarly situated*,
                                Plaintiffs,

                    v.

TENG FEI RESTAURANT GROUP INC.
            d/b/a Tenzan 89 Japanese Cuisine and
FEI TENG
                                Defendants.
------------------------------------------------------------x

**Case No: 17-cv-1774**

**29 U.S.C. § 216(b)**
**COLLECTIVE ACTION &**
**F.R.C.P. 23  CLASS**
**ACTION**

**COMPLAINT**

Plaintiffs GUANGQING LIN, and YUN QIANG WU (hereinafter referred to as

"Plaintiffs"), on behalf of themselves and others similarly situated, by and through his

attorney, Troy Law, PLLC, hereby brings this complaint against Defendants TENG FEI

RESTAURANT GROUP, INC. d/b/a Tenzan 89 Japanese Cuisine and FEI TENG

(hereinafter referred to as "Defendants").

## INTRODUCTION

1.  This action is brought by Plaintiffs, on behalf of themselves as well as other

    similarly situated employees against Defendants for alleged violations of the Federal

    Labor Standards Act, ("FLSA") 29 U.S.C. § 201 *et seq.* and of the New York Labor

    Law (NYLL), arising from Defendants' various willful and unlawful employment

    policies, patterns and/or practices.

2. Plaintiffs allege pursuant to the FLSA, that they are entitled to recover from the Defendants: (1) unpaid minimum wage compensation, (2) unpaid overtime wage compensation, (3) liquidated damages, (4) prejudgment and post-judgment interest; and/or (5) attorneys' fees and costs.

3. Plaintiffs further allege pursuant to New York Labor Law § 650 *et seq.* and 12 New York Codes, Rules and Regulations §§ 146 ("NYCRR") that they are entitled to recover from the Defendants: (1) unpaid minimum wage compensation, (2) unpaid overtime wage compensation, (3) up to five thousand dollars ($5,000) per Plaintiff for Defendants' failure to provide a Time of Hire Notice detailing rates of pay and payday, (4) up to five thousand dollars ($5,000) per Plaintiff for Defendants' failure to provide a paystub that accurately and truthfully lists employee's hours along with the name, employer's name, employer's address and telephone number, employee's rate or rates of pay, any deductions made from employee's wages, any allowances claimed as part of the minimum wage, and the employee's gross and net wages for each pay day, (5) liquidated damages equal to the sum of unpaid minimum wage, unpaid "spread of hours" premium, unpaid overtime in the amount of twenty five percent under NYLL §§190 *et seq.*, §§650 *et seq.*, and one hundred percent after April 9, 2011 under NY Wage Theft Prevention Act, (6) 9% simple prejudgment interest provided by NYLL, (7) post-judgment interest, and (8) attorney's fees and costs.

## JURISDICTION AND VENUE

4. This Court has original federal question jurisdiction over this controversy under 29 U.S.C. §216(b), 28 U.S.C. § 1331.

5. This Court has jurisdiction over state law claims asserted here pursuant to the Class Action Fairness Act, 28 U.S.C. §1332(d)(2), and has supplemental jurisdiction over the New York Labor Law claims pursuant to 28 U.S.C. § 1367(a).

6. Venue is proper in the Southern District of New York pursuant to 28 U.S.C. §§ 1391(b) and (c), because Defendants conduct business in this District, and the acts and omissions giving rise to the claims herein alleged took place in this District.

## PLAINTIFFS

7. Plaintiff GUANGQING LIN was employed by Defendants at Corporate Defendant TENG FEI RESTAURANT GROUP, INC. d/b/a Tenzan 89 Japanese Cuisine located at 1714 2nd Avenue, New York, NY 10128.

8. Plaintiff YUN QIANG WU was employed by Defendants at Corporate Defendant TENG FEI RESTAURANT GROUP, INC. d/b/a Tenzan 89 Japanese Cuisine located at 1714 2nd Avenue, New York, NY 10128.

## DEFENDANTS

*Corporate Defendants*

9. Corporate Defendant TENG FEI RESTAURANT GROUP, INC. d/b/a Tenzan 89 Japanese Cuisine is a domestic business corporation organized under the laws of the State of New York with a principal address at 1714 2nd Avenue, New York, NY 10128.

10. TENG FEI RESTAURANT GROUP, INC. d/b/a Tenzan 89 is a business engaged in interstate commerce that has gross sales in excess of Five Hundred Thousand Dollars ($500,000) per year.

11. TENG FEI RESTAURANT GROUP, INC. d/b/a Tenzan 89 purchased and handled goods moved in interstate commerce.

***Owner/ Operator Defendants***

12. The Individual Defendants are officers, directors, managers and/or majority shareholders or owners of the Corporate Defendants TENG FEI RESTAURANT GROUP, INC. d/b/a Tenzan 89, who, as one of the ten largest shareholders, are individually responsible for unpaid wages under the New York Business Corporation Law.

13. Owner/ Operator Defendant FEI TENG (1) had the power to hire and fire TENG FEI RESTAURANT GROUP, INC. d/b/a Tenzan 89 employees, including Plaintiffs, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment of employees, and (4) maintained employee records.

14. FEI TENG was involved in the day-to-day operations of the restaurant, as the TENG FEI RESTAURANT GROUP, INCD. d/b/a Tenzan 89 did not have any managers in charge.

15. FEI TENG acted intentionally and maliciously and is an employer pursuant to FLSA, 29 U.S.C. §203d, and regulations promulgated thereunder, U.S.C. §203d, and regulations promulgated thereunder, 29 C.F.R. §791.2 and the regulations thereunder, and is jointly and severally liable with TENG FEI RESTAURANT GROUP, INC. d/b/a Tenzan 89.

## STATEMENT OF FACTS

16. At all relevant times, the restaurant has at one time at least twenty (20) employees,

including at least four (4) deliverymen, five (5) to six (6) front of the house staff, four (4) sushi chefs, two (2) kitchen staff, one (1) miscellaneous worker and three (3) waiters.

### Plaintiff GUANGQING LIN

17. From on or about August 30 2015 to February 3, 2017, Plaintiff GUANGQING LIN was employed by Defendants to work as a deliveryman for TENG FEI RESTAURANT GROUP, INC. d/b/a Tenzan 89 located at 1714 2nd Avenue, New York, NY 10128.

18. At all relevant times, Plaintiff GUANGQING LIN worked from:

    a. 11:30 to 23:00 for eleven and a half (11.5) hours each day on Mondays, Tuesdays, Thursdays, Fridays and Sundays for five (5) days and fifty seven and a half (57.5) hours a week;

    b. 17:00 to 23:00 for six (6) hours each day on Wednesdays and Saturdays for twelve (12) hours a week.

19. At all relevant times, Plaintiff GUANGQING LIN would work sixty nine and a half (69.5) hours a week on average.

20. At all relevant times, Plaintiff GUANGQING LIN was paid one thousand two hundred dollars ($1,200) each month, in cash.

21. At all relevant times, Plaintiff GUANGQING LIN was not given any fixed break.

22. Instead Plaintiff GUANGQING LIN had ten (10) minutes to eat his two meals, during which Plaintiff was on demand.

23. Should a customer call in for order during his ten minute break, his break ends.

24. At all relevant times, Plaintiff GUANGQING LIN was also not informed of his

hourly pay rate or any tip deductions towards the minimum wage, and he was not paid overtime pay for overtime work.

25. Further, Plaintiff GUANGQING LIN had to do side work, including doing the sanitation, mopping the floor, sweeping the floor, cutting vegetables, moving stocks, moving garbage and throwing garbage away.

26. Plaintiff GUANGQING LIN's non-tipped work exceeded two (2) hours or twenty percent (20%) of the Plaintiff's workday.

27. If Plaintiff GUANGQING LIN delivered the order to the wrong address, Plaintiff GUANGQING LIN would have the order deducted from his pay.

28. During the coures of his employment, Plaintiff GUANGQING LIN had his pay deducted once for delivering the order to the wrong address.

29. Defendants never informed Plaintiff GUANGQING LIN that they were taking tip credit towards the minimum wage.

30. At all relevant times, Defendants knowingly and willfully failed to pay GUANGQING LIN his lawful overtime compensation of one and one half times (1.5x) their regular rate of pay for all hours worked over forty (40) in a given workweek.

31. While employed by Defendants, Plaintiff GUANGQING LIN was not exempt under federal and state laws requiring employers to pay employees overtime.

32. For all relevant times, Defendants required Plaintiff GUANGQING LIN to use and maintain a delivery vehicle to benefit Defendants' business. Defendants also required Plaintiff to maintain the vehicle. Defendants did not compensate for the purchase, repair, maintenance, and utilization of the bicycle according to state

federal labor laws.

33. Plaintiff GUANGQING LIN purchased an electric bicycle for approximately one thousand five hundred dollars ($1,500.00) upon commencement of his employment with Defendants for purposes of delivery orders for Defendants' benefit.

34. During the course of his work with Defendants, Plaintiff GUANGQING LIN had to purchase two battery costing four hundred fifty dollars ($450) each for his electric bicycle.

35. There was additionally a cost of three hundred thirty dollars ($330) per year in maintaining the engine, twenty dollars every two months for the brake, and one hundred twenty dollars ($120) for the tires every five months.

36. During the course of Plaintiff's employment, Plaintiff changed the engine once, changed the brake six (6) to seven (7) times, and the tires two (2) or three (3) times.

37. Defendants have failed to reimburse Plaintiff GUANGQING LIN for the maintenance and/or repair costs.

### Plaintiff YUN QIANG WU

38. From on or about November 20, 2015 to November 30, 2016, Plaintiff YUN QIANG WU was employed by Defendants to work as a deliveryman for TENG FEI RESTAURANT GROUP, INC. d/b/a Tenzan 89 located at 1714 2nd Avenue, New York, NY 10128.

39. Plaintiff YUN QIANG WU was fired by TENG FEI.

40. At all relevant times, Plaintiff YUN QIANG WU worked from:

    a. 11:30 to 23:00 for eleven and a half (11.5) hours each day on Mondays, Wednesdays, Thursdays, Fridays and Sundays for five (5) days and fifty

seven and a half (57.5) hours a week;

    b.   17:00 to 23:00 for six (6) hours each day on Tuesdays and Saturdays for twelve (12) hours a week.

41. Plaintiff YUN QIANG WU would work sixty nine and a half (69.5) hours a week on average.

42. At all relevant times, Plaintiff YUN QIANG WU was paid one thousand two hundred dollars ($1,200) each month, in cash.

43. At all relevant times, Plaintiff YUN QIANG WU was not given any fixed break.

44. Instead Plaintiff YUN QIANG WU had ten (10) minutes to eat his two meals, during which Plaintiff was on demand.

45. Should a customer call in for order during his ten minute break, his break ends.

46. At all relevant times, Plaintiff YUN QIANG WU was also not informed of his hourly pay rate or any tip deductions towards the minimum wage, and he was not paid overtime pay for overtime work.

47. Defendants never informed Plaintiff YUN QIANG WU that they were taking tip credit towards the minimum wage.

48. Further, Plaintiff YUN QIANG WU had to do side work, including doing the sanitation, mopping the floor, sweeping the floor, cutting vegetables, moving stocks, moving garbage and throwing garbage away.

49. Plaintiff YUN QIANG WU's non-tipped work exceeded two (2) hours or twenty percent (20%) of the Plaintiff's workday.

50. At all relevant times, Defendants knowingly and willfully failed to pay YUN QIANG WU his lawful overtime compensation of one and one half times (1.5x) their

regular rate of pay for all hours worked over forty (40) in a given workweek.

51. While employed by Defendants, Plaintiff YUN QIANG WU was not exempt under federal and state laws requiring employers to pay employees overtime.

52. For all relevant times, Defendants required Plaintiff YUN QIANG WU to use and maintain a delivery vehicle to benefit Defendants' business. Defendants also required Plaintiff to maintain the vehicle. Defendants did not compensate for the purchase, repair, maintenance, and utilization of the bicycle according to state federal labor laws.

53. Plaintiff YUN QIANG WU purchased an electric bicycle for approximately one thousand five hundred dollars ($1,500.00) upon commencement of his employment with Defendants for purposes of delivery orders for Defendants' benefit.

54. During the course of his work with Defendants, Plaintiff YUN QIANG WU had to purchase one battery costing four hundred fifty dollars ($450) each for his electric bicycle.

55. There was additionally a cost of three hundred thirty dollars ($330) per year in maintaining the engine, twenty dollars every two months for the brake, and one hundred twenty dollars ($120) for the tires.

56. During the course of Pliantiff's employment, Plaintiff changed the tires once, and the brakes for six (6) to seven (7) times.

57. Defendants have failed to reimburse Plaintiff GUANGQING LIN for the maintenance and/or repair costs.

## COLLECTIVE ACTION ALLEGATIONS

58. Plaintiffs bring this action individually and as class representative individually and on behalf of all other and former non-exempt employees who have been or were employed by the Defendants for up to the last three (3) years, through entry of judgment in this case (the "Collective Action Period") and whom were not compensated at least the hourly minimum wage and/or overtime compensation for all hours worked in excess of forty (40) hours per week (the "Collective Action Members").

## CLASS ACTION ALLEGATIONS

59. Plaintiffs bring their NYLL claims pursuant to Federal Rules of Civil Procedure ("F. R. C. P.") Rule 23, on behalf of all non-exempt personnel employed by Defendants on or after the date that is six years before the filing of the Complaint in this case as defined herein (the "Class Period").

60. All said persons, including Plaintiffs, are referred to herein as the "Class."

61. The Class members are readily ascertainable. The number and identity of the Class members are determinable from the records of Defendants. The hours assigned and worked, the positions held, and the rate of pay for each Class Member is also determinable from Defendants' records. For purpose of notice and other purposes related to this action, their names and addresses are readily available from Defendants. Notice can be provided by means permissible under said F.R.C.P 23.

### *Numerosity*

62. The proposed Class is so numerous that joinder of all members is impracticable, and

the disposition of their claims as a class will benefit the parities and the Court. Although the precise number of such persons is unknown, and the facts on which the calculation of the number is presently within the sole control of the Defendants, upon information and belief, there are more than forty (40) members of the class.

*Commonality*

63. There are questions of law and fact common to the Class which predominate over any questions affecting only individual class members, including:

    a. Whether Defendant employed Plaintiffs and the Class within the meaning of the New York law;

    b. Whether Plaintiffs and Class members are paid at least the minimum wage for each hour worked under the New York Labor Law;

    c. Whether Plaintiffs and Class members are entitled to and paid overtime under the New York Labor Law;

    d. Whether Defendants maintained a policy, pattern and/or practice of failing to pay Plaintiffs and the Rule 23 Class spread-of-hours pay as required by the NYLL;

    e. Whether Defendants maintained policy, pattern and/or practice of failing to provide requisite statutory meal periods;

    f. Whether Defendants provided a Time of Hire Notice detailing rates of pay and payday at the start of Plaintiffs and the Rule 23 Class's start of employment and/or or timely thereafter;

    g. Whether Defendants provided paystubs detailing the rates of pay and credits taken towards the minimum wage to Plaintiffs and the Rule 23

class on each payday; and

h.  At what common rate, or rates subject to common method of calculation was and is Defendants required to pay Plaintiffs and the Class members for their work.

### Typicality

64. Plaintiffs' claims are typical of those claims which could be alleged by any member of the Class, and the relief sought is typical of the relief that would be sought by each member of the Class in separate actions. All the Class members were subject to the same corporate practices of Defendants, as alleged herein, of failing to pay minimum wage compensation and/or overtime compensation. Defendants' corporate wide policies and practices affected all Class members similarly, and Defendants benefited from the same type of unfair and/ or wrongful acts as to each Class member. Plaintiffs and other Class members sustained similar losses, injuries and damages arising from the same unlawful policies, practices and procedures.

### Adequacy

65. Plaintiffs are able to fairly and adequately protect the interests of the Class and have no interests antagonistic to the Class.  Plaintiffs are represented by attorneys who are experienced and competent representing Plaintiffs in both class action and wage and hour employment litigation cases.

### Superiority

66. A class action is superior to other available methods for the fair and efficient adjudication of the controversy, particularly in the context of wage and hour

litigation where individual Class members lack the financial resources to vigorously prosecute a lawsuit against corporate defendants. Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expenses that numerous individual actions engender. Because the losses, injuries, and damages suffered by each of the individual Class members are small in the sense pertinent to a class action analysis, the expenses and burden of individual litigation would make it extremely difficult or impossible for the individual Class members to redress the wrongs done to them. Further, important public interests will be served by addressing the matter as a class action. The adjudication of individual litigation claims would result in a great expenditure of Court and public resources; however, treating the claims as a class action would result in a significant saving of these costs. The prosecution of separate actions by individual members of the Class would create a risk of inconsistent and/or varying adjudications with respect to the individual members of the Class, establishing incompatible standards of conduct for Defendants and resulting in the impairment of class members' rights and the disposition of their interests through actions to which they were not parties. The issues in this action can be decided by means of common, class-wide proof. In addition, if appropriate, the Court can, and is empowered to, fashion methods to efficiently manage this action as a class action.

67. Upon information and belief, Defendants and other employers throughout the state violate the New York Labor Law. Current employees are often afraid to assert their rights out of fear of direct or indirect retaliation. Former employees are fearful of

bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment. Class actions provide class members who are not named in the complaint a degree of anonymity which allows for the vindication of their rights while eliminating or reducing these risks.

## STATEMENT OF CLAIMS

### COUNT I.
### [Violations of the Fair Labor Standards Act—Minimum Wage
### Brought on behalf of the Plaintiff and the FLSA Collective]

68. Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

69. At all relevant times, Defendants had a policy and practice of refusing to pay the statutory minimum wage to Plaintiff, and the similarly situated collective action members, for some or all of the hours they worked.

70. The FLSA provides that any employer who violates the provisions of 29 U.S.C. §206 shall be liable to the employees affected in the amount of their unpaid minimum compensation, and in an additional equal amount as liquidated damages.

71. Defendants knowingly and willfully disregarded the provisions of the FLSA as evidenced by failing to compensate Plaintiffs and Collective Class Members at the statutory minimum wage when they knew or should have known such was due and that failing to do so would financially injure Plaintiff and Collective Action members.

### COUNT II.
### [Violation of New York Labor Law—Minimum Wage
### Brought on Behalf of Plaintiff and Potential Rule 23 Class]

72. Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though

fully set forth herein.

73. At all relevant times, Plaintiffs were employed by Defendants within the meaning of New York Labor Law §§2 and 651.

74. At all relevant times, Defendants had a policy and practice of refusing to pay the statutory minimum wage to Plaintiffs, and the collective action members, for some or all of the hours they worked.

75. Defendants knowingly and willfully violated Plaintiffs' and similarly situated Class Members' rights by failing to pay him minimum wages in the lawful amount for hours worked.

76. An employer who fails to pay the minimum wage shall be liable, in addition to the amount of any underpayments, for liquidated damages equal to twenty five percent (25%) of the shortfall under NYLL §§190 *et seq.*, §§650 *et seq.*, and one hundred percent (100%) after April 9, 2011 under NY Wage Theft Prevention Act, and interest.


## COUNT III.
### [Violations of the Fair Labor Standards Act—Overtime Wage
### Brought on behalf of the Plaintiff and the FLSA Collective]

77. Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

78. The FLSA provides that no employer engaged in commerce shall employ a covered employee for a work week longer than forty (40) hours unless such employee receives compensation for employment in excess of forty (40) hours at a rate not less than one and one-half times the regular rate at which he or she is employed, or one

and one-half times the minimum wage, whichever is greater. 29 USC §207(a).

79. The FLSA provides that any employer who violates the provisions of 29 U.S.C. §207 shall be liable to the employees affected in the amount of their unpaid overtime compensation, and in an additional equal amount as liquidated damages. 29 USC §216(b).

80. Defendants' failure to pay Plaintiffs and the FLSA Collective their overtime pay violated the FLSA.

81. At all relevant times, Defendants had, and continue to have, a policy of practice of refusing to pay overtime compensation at the statutory rate of time and a half to Plaintiffs and Collective Action Members for all hours worked in excess of forty (40) hours per workweek, which violated and continues to violate the FLSA, 29 U.S.C. §§201, *et seq.*, including 29 U.S.C. §§207(a)(1) and 215(a).

82. The FLSA and supporting regulations required employers to notify employees of employment law requires employers to notify employment law requirements. 29 C.F.R. §516.4.

83. Defendants willfully failed to notify Plaintiffs and FLSA Collective of the requirements of the employment laws in order to facilitate their exploitation of Plaintiffs' and FLSA Collectives' labor.

84. Defendants knowingly and willfully disregarded the provisions of the FLSA as evidenced by their failure to compensate Plaintiffs and Collective Class Members the statutory overtime rate of time and one half for all hours worked in excess of forty (40) per week when they knew or should have known such was due and that failing to do so would financially injure Plaintiffs and Collective Action members.

## COUNT IV.
### [Violation of New York Labor Law—Overtime Pay
### Brought on behalf of Plaintiff and Potential Rule 23 Class]

85. Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

86. An employer who fails to pay the minimum wage shall be liable, in addition to the amount of any underpayments, for liquidated damages equal to twenty five percent (25%) before April 9, 2011 and one hundred percent (100%) under NY Wage Theft Prevention Act, and interest.

87. At all relevant times, Defendants had a policy and practice of refusing to pay the overtime compensation to Plaintiffs at one and one half times the hourly rate the Plaintiffs and the class are entitled to.

88. Defendant' failure to pay Plaintiffs their overtime pay violated the NYLL.

89. Defendants' failure to pay Plaintiffs were not in good faith.


## COUNT V.
### [Violation of New York Labor Law—Spread of Time Pay
### Brought on behalf of Plaintiff]

90. Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

91. The NYLL requires employers to pay an extra hour's pay for every day that an employee works an interval in excess of ten hours pursuant to NYLL §§190, *et seq.*, and §§650, *et seq.*, and New York State Department of Labor regulations §146-1.6.

92. Defendants' failure to pay Plaintiff spread-of-hours pay was not in good faith.

**COUNT VI.**

**[Breach of Implied Contract for Reimbursement of all Costs and Expenses of Bicycle/ Electric Delivery Vehicle, including Depreciation, Insurance, Maintenance and Repairs]**

93. Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

94. Throughout the relevant period, Defendants required their deliverymen to bear all of the "out-of-pocket" costs associated with their vehicles, including the purchase, maintenance, repair, maintenance of the delivery vehicles, including Plaintiff's bicycles, including electric and gas bicycles.

95. Based on their personal experience and available information, Plaintiffs can document actual "out-of-pocket" vehicle related expenses of their personal bicycles that were used for deliveries made under employment under Defendants.

96. The conduct of Defendants, and the course of Defendant's conduct between the parties, evidenced an intent for Plaintiffs to maintain the delivery vehicle in working condition.

97. Plaintiffs maintained and repaired their motor vehicle at their own expense.

98. Plaintiffs performed these deliveries for the sole benefit of the Defendants.

99. Defendants neither explicitly nor implicitly requested Plaintiffs to cease the purchase of replacement bicycles, replacement batteries and/or other regular maintenance of the vehicles.

100. As a result of the afore-alleged conduct of the parties, an implied contract arose between them the terms of which are that Plaintiffs would incur the expenses for vehicle maintenance, in exchange for compensation from Defendants for such

expenses.

101.    Defendants have not fully compensated Plaintiffs for expenses incurred from maintenance of the vehicle and the purchase of gas.  As a result, Defendants breached the implied contract by failing and refusing to pay Plaintiffs a reasonable sum under the afore-alleged facts.

102.    Defendants owe Plaintiffs their overdue costs incurred from delivery vehicles.

## COUNT VII.
### [Violation of New York Labor Law—Failure to Provide Meal Periods Brought on behalf of Plaintiff and Potential Rule 23 Class]

103.    Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

104.    The NYLL requires that employees provide: a noon day meal period of at least thirty (30) minutes for employees who work a shift of more than six hours extending over the noon day meal period from 11 a.m. to 2 p.m.; an additional meal period between 5 p.m. and 7 p.m. of at least twenty (20) minutes for employees whose shift started before 11 a.m. and continues later than 7 p.m.; and/or a forty-five (45) minute meal period at a time midway between the beginning and end of the shift for employees whose shift lasts more than six hours and starts between 1 p.m. and 6 a.m. NYLL§ 162.

105.    Defendants failed to provide meal periods required by NYLL §162 for every day that Plaintiffs work or worked.

106.    Though the Department of Labor commissioner may permit a shorter time to be fixed for meal periods than hereinbefore provided, such permit must be in writing and be kept conspicuously posted in the main entrance of the establishment. No such

permit is posted.

107. Defendants' failure to provide the meal periods required by NYLL §162 was not in good faith.


## COUNT VIII.
**[Violation of New York Labor Law—Record-Keeping Requirements**
**Brought on behalf of Plaintiff and Potential Rule 23 Class]**

108. Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

109. Defendants did not maintain, establish and preserve Plaintiffs' weekly payroll records for a period of not less than six years, as required by NYRR § 146-2.1.

110. As a result of Defendants' unlawful conduct, Plaintiffs have sustained damages including loss of earning, in an amount to be established at trial, liquidated damages, prejudgment interest, costs and attorneys' fee, pursuant to the state law.

111. Upon information and belief, Defendants failed to maintain adequate and accurate written records of actual hours worked and true wages earned by Plaintiffs in order to facilitate their exploitation of Plaintiffs' labor.

112. Defendants' failure to maintain adequate and accurate written records of actual hours worked and true wages earned by Plaintiff were not in good faith.


## COUNT IX.
**[Violation of New York Labor Law—Time of Hire Wage Notice Requirement**
**Brought on behalf of Plaintiff and Potential Rule 23 Class]**

113. Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

114. The NYLL and supporting regulations require employers to provide written notice

of the rate or rates of pay and the basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as a part of minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer; the name of the employer; any "doing business as" names used by the employer; the physical address of employer's main office or principal place of business, and a mailing address if different; the telephone number of the employer.  NYLL §195-1(a).

115.    Defendants intentionally failed to provide notice to employees in violation of New York Labor Law § 195, which requires all employers to provide written notice in the employee's primary language about the terms and conditions of employment related to rate of pay, regular pay cycle and rate of overtime on their or her first day of employment.

116.    Defendants not only did not provide notice to each employee at Time of Hire, but failed to provide notice to Plaintiffs even after the fact.

117.    Due to Defendants' violations of New York Labor Law, Plaintiff are entitled to recover from Defendants, jointly and severally, $50 for each workday that the violation occurred or continued to occur, up to $5,000, together with costs and attorneys' fees pursuant to New York Labor Law. N.Y. Lab. Law §198(1-b).

## COUNT X.
### [Violation of New York Labor Law—New York Pay Stub Requirement Brought on behalf of Plaintiff and Potential Rule 23 Class]

118.    Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

119.    The NYLL and supporting regulations require employers to provide detailed

paystub information to employees every payday. NYLL §195-1(d).

120.   Defendants have failed to make a good faith effort to comply with the New York Labor Law with respect to compensation of each Plaintiff, and did not provide the paystub on or after each Plaintiff' payday.

121.   Due to Defendants' violations of New York Labor Law, each Plaintiff is entitled to recover from Defendants, jointly and severally, $250 for each workday of the violation, up to $5,000 for each Plaintiff together with costs and attorneys' fees pursuant to New York Labor Law. N.Y. Lab. Law §198(1-d).


## COUNT XI.
### [Civil damages for fraudulent filing of IRS returns. Violations of 26 USC §7434 Brought on behalf of the Plaintiff]

122.   Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

123.   26 USC §7434 provides that if any person willfully files a fraudulent information return with respect to payments purported to be made to any other person, such other person may bring a civil action for damages against the person so filing such a return.

124.   Due to Defendants' violations of 26 USC §7434, Plaintiffs are entitled to recover from Defendants, jointly and severally: (1) any actual damages sustained by the Plaintiffs as a proximate result of the filing of the fraudulent information return (including any costs attributable to resolving deficiencies asserted as a result of such a filing), (2) the cost of the action, and (3) in the court's discretion, reasonable attorneys' fees.

## COUNT XII.
### [Civil damages for Deceptive Acts and Practices. Violations of New York General Business Law §349
### Brought on behalf of the Plaintiff]

125.   Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

126.   New York General Business Law §349 provides that if any person willfully files a fraudulent information return with respect to payments purported to be made to any other person, such other person may bring a civil action for damages against the person so filing such a return.

127.   Due to Defendants' violations of New York GBS Law §349, Plaintiff is entitled to recover from Defendants, jointly and severally, their actual damages or fifty dollars ($50), whichever is greater, or both such actions.

128.   Plaintiffs demand the right to examine, in person or by attorney, the minutes of the proceedings of the shareholders and records of shareholders of Defendant Corporation to recover wages owed as employees of the corporation.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on their own behalf, and on the behalf of the FLSA Collective Plaintiffs, respectfully requests that this Court enter a judgment providing the following relief:

a)       Authorizing Plaintiffs at the earliest possible time to give notice of this collective action, or that the Court issue such notice, to all persons who are presently, or have up through the extent allowable under the statute of limitations and including the date of issuance of court-supervised notice, been

employed by Defendants as non-exempt employees. Such notice shall inform them that the civil notice has been filed, of the nature of the action, of their right to join this lawsuit if they believe they were denied premium overtime wages;

b)    Certification of this case as a collective action pursuant to FLSA;

c)    Issuance of notice pursuant to 29 U.S.C. § 216(b) to all similarly situated members of the FLSA opt-in class, apprising them of the pendency of this action, and permitting them to assert timely FLSA claims and state claims in this action by filing individual Consent to Sue forms pursuant to 29 U.S.C. § 216(b), and appointing Plaintiffs and their counsel to represent the Collective Action Members;

d)    A declaratory judgment that the practices complained of herein are unlawful under FLSA and New York Labor Law;

e)    An injunction against Corporate Defendant, its officers, agents, successors, employees, representatives and any and all persons acting in concert with them as provided by law, from engaging in each of unlawful practices and policies set forth herein;

f)    An award of unpaid minimum wage and overtime wages due under FLSA and New York Labor Law due to Plaintiffs and the Collective Action members plus compensatory and liquidated damages in the amount of twenty five percent (25%) prior to April 9, 2011 and one hundred percent (100%) thereafter under NY Wage Theft Prevention Act;

g) An award of liquidated and/or punitive damages as a result of Defendants' knowing and willful failure to pay wages at least the hourly minimum wage, overtime compensation pursuant to 29 U.S.C. §216;

h) Up to five thousand dollars ($5,000) per Plaintiff for Defendants' failure to provide a Time of Hire Notice detailing rates of pay and payday;

i) Up to five thousand dollars ($5,000) per Plaintiff for Defendants' failure to provide a paystub that lists employee's name, employer's name, employer's address and telephone number, employee's rate or rates of pay, any deductions made from employee's wages, any allowances claimed as part of the minimum wage, and the employee's gross and net wages for each pay day;

j) An award of liquidated and/ or punitive damages as a result of Defendants' willful failure to overtime compensation, and "spread of hours" premium pursuant to New York Labor Law;

k) An award of costs and expenses of this action together with reasonable attorneys' and expert fees pursuant to 29 U.S.C. §216(b) and NYLL §§198 and 663;

l) The cost and disbursements of this action;

m) An award of prejudgment and post-judgment fees;

n) Providing that if any amounts remain unpaid upon the expiration of ninety days following the issuance of judgment, or ninety days after expiration of the time to appeal and no appeal is then pending, whichever is later, the total amount of judgment shall automatically increase by fifteen percent, as required by NYLL §198(4); and

o)     Such other and further legal and equitable relief as this Court deems necessary,

just, and proper.


Dated: Flushing, New York
March 9, 2017

TROY LAW, PLLC
*Attorneys for the Plaintiffs, the*
*proposed FLSA Collective, and*
*potential Rule 23 Class*

  /s/ John Troy
John Troy (JT0481)
41-25 Kissena Boulevard Suite 119
Flushing, NY 11355
Tel: (718) 762-1324
Email: johntroy@troypllc.com